**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ONEPASS DATA TECHNOLOGY LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| VERIZON COMMUNICATIONS, INC. AND ) | |
| CELLCO PARTNERSHIP D/B/A VERIZON ) | |
| WIRELESS, ) | |
| ) | |
| Defendants. ) | |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff OnePass Data Technology LLC ("OnePass" or "Plaintiff"), for its Complaint against Defendants Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless, (collectively "Verizon" or "Defendants"), alleges as follows:

### THE PARTIES

1.      Plaintiff OnePass is a limited liability company organized and exiting under the laws of the State of Ohio, with its principal place of business at 34 South Main Street, Suite 200, Chagrin Falls, OH 44022.

2.      On information and belief, Defendant Verizon Communications, Inc. ("Verizon Communications") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1095 Avenue of the Americas, New York, New York 10036. Defendant Verizon Communications may be served with process through its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.

3.      On information and belief, Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") is a partnership organized and existing under the laws of the State of Delaware and a wholly-owned subsidiary Verizon Communications, Inc., having a place of business at One Verizon Way, Basking Ridge, New Jersey 07920.  Defendant Verizon Wireless may be served with process through its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. § 271.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (any Act of Congress relating to patents).

6.      This Court can exercise personal jurisdiction over Verizon Communications, Inc., and Verizon Wireless in this action because each:  (i) is incorporated in Delaware and avails itself of the laws and protections of this District; (ii) conducts substantial and pervasive business in Delaware; and (iii) regularly does or solicits business, engages in other persistent courses of conduct, and derives substantial revenue from goods and services sold to entities and individuals in Delaware.

7.      On information and belief, each of Verizon Communications, Inc.,  and Verizon Wireless:  (i) is registered and authorized to do business in the State of Delaware; (ii) derives and has derived substantial revenue from services provided to persons or entities in Delaware; and (iii) has committed purposeful acts and/or transactions in Delaware such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because each of Verizon Communications, Inc., and Verizon Wireless is incorporated in and resides in Delaware.

### THE PATENTS-IN-SUIT

9.     On May 20, 2008, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,376,680 ("the '680 Patent"), entitled "System And Method For Cleansing And Appending Data Records Of A Database" after full and fair examination. The application that led to the '680 Patent, U.S. Patent Application Serial No. 10/820,375, was filed April 7, 2004. A true and correct copy of the '680 Patent is attached hereto as Exhibit A.

10.     On April 26, 2017, the United States Patent and Trademark Office duly and legally issued an Ex Parte Reexamination Certificate confirming the subject matter eligibility of the issued claims of the '680 Patent after full and fair examination. A true and correct copy of the '680 Patent Reexamination Certificate is attached hereto as Exhibit B.

11.     On March 25, 2014, the United States Patent and Trademark Office duly and legally issued United States Patent No. 8,682,866 ("the '866 Patent'), entitled "System And Method For Cleansing, Linking And Appending Data Records Of A Database," after full and fair examination. The application that led to the '866 Patent, U.S. Patent Application Serial No. 12/123,299, was a continuation of U.S. Patent Application Serial No. 10/820,375. A true and correct copy of the '866 Patent is attached hereto as Exhibit C.

12.     OnePass is the assignee of all right, title, and interest in and to the '680 Patent and the '866 Patent (collectively, the "Patents-in-Suit") and possesses all rights to sue for and recover damages for infringement of the Patents-in-Suit, including the rights to sue for and recover damages for past, present and future infringements thereof.

13.     The Patents-in-Suit are valid and enforceable.

14.     The technology at issue was invented by Messrs. John A. McDill and Charles L. Kettler, who also founded OnePass.  The inventions recited in the Patents-in-Suit are directed to innovative technological solutions for cleaning data records, which provide significant improvements and advantages over conventional data cleansing technology.  Each of the Patents-in-Suit describe specific single-pass system architecture and methods that were not conventional at the time of the inventions.

15.     The Patents-in-Suit are rooted in computer technology directed to specific architecture and methods that provide major advances to the efficiency, reliability, and operation of various applications in the data cleansing industry.  More specifically, the claimed inventions recited in the Patents-in-Suit provide significantly improved measures of time complexity and space complexity, as well as significantly improved wall-clock time performance compared to the conventional technology at the time of the inventions.  *See*, Exhibit D (Declaration of Dr. Paul J. Fortier).

16.     The claims of the Patents-in-Suit recite specific steps and system architecture to accomplish the desired results and go beyond simply claiming results.  Accordingly, the inventions of the Patents-in-Suit provide new computer system architecture and operation that did not previously exist and that improves data cleansing technology.

**INFRINGING TECHNOLOGIES**

17.     The mailing industry, including the United States Postal Service ("USPS"), places great value on the ability to timely and efficiently deliver mail in the United States.  According to the USPS statistics, 45 million Americans (17% of the United States population) change addresses each year.  *See* pe.usps.com/businessmail101?ViewName=CheckTheAddresses.  To mitigate the costs and inefficient use of resources associated with handling undeliverable mail having

erroneous or outdated mailing addresses, the USPS offers reduced postage rates ("automation prices") for commercial First-Class Mail® and Standard Mail® (also referred to as USPS Marketing Mail) to mailers who cleanse and verify the accuracy of the address records in their mailing lists.

18.    In this regard, the USPS, in cooperation with the mailing industry, designed the Coding Accuracy Support System ("CASS™") to test and certify address matching software for use by mailers to standardize, correct and verify mailing list address records for commercial First-Class Mail® and/or Standard Mail®.  *See* postalpro.usps.com/certifications/cass ("The CASS™ certification process is designed in cooperation with the mailing industry to improve the accuracy of postal codes, i.e., Five-Digit ZIP Code®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mailpieces.").

19.    In connection with the CASS™ program, the USPS issues rules and specifications directed to, *inter alia*:  (a) the various functions performed and the USPS reference file used in connection with such each function to standardize, correct and verify mailing list address records; (b) the logic for searching and matching address records in the USPS reference files with mailing list address records; and (c) the sequence in which the functions are performed to standardize, correct and verify mailing list address records using the USPS reference files.  The USPS issues updated rules and specifications for each CASS™  period (referred to as a "Cycle").  The two most recent CASS™ periods are Cycle N, which extended from August 1, 2011 to July 31, 2023, and Cycle O, which commenced on August 1, 2023 and is scheduled to expire on July 31, 2028.

20.    The updated rules and specifications for both the Cycle N and Cycle O CASS™ periods require standardizing, correcting, and verifying mailing list address records by employing (1) postal coding functions using the USPS ZIP + 4® and City/State reference files; (2) address verification functions using either of the USPS DPV® or DSF$^{2}$® reference files (hereinafter

alternately referred to as "the USPS DPV®/DSF²® reference file"); (3) address conversion functions using the USPS LACS^Link® reference file; and (4) business addressing functions using the USPS Suite^Link® reference file.

21.    The updated rules and specifications for both the Cycle N and Cycle O CASS™ periods also require that any mailing address record that is corrected in connection with the business addressing function using the USPS Suite^Link® reference file must be re-processed through the postal coding functions using the USPS ZIP + 4® and City/State reference files, the address verification functions using the USPS DPV®/DSF²® reference file, and the address conversion functions using the USPS LACS^Link® reference file.

22.    To qualify for the commercial First-Class Mail® and Standard Mail® automation prices, a mailer's mailing list address records must be standardized, corrected and verified using CASS™-certified address matching software on the mailer's computer system or through a USPS authorized service provider.  *See*, https://postalpro.usps.com/certifications/cass ("Any mailing claimed at an automation price must be produced from address lists properly matched and coded with CASS-certified address matching methods.")

23.    The mailer must maintain records of CASS Form 3553 Summary Reports  to verify the mailer's use of CASS™-certified software for cleansing its mailing list and provide a qualitative statistical summary of the results of the cleansing process.

### ACCUSED SYSTEMS & METHODS

24.    OnePass accuses Verizon of infringement of method claims of the '680 Patent and the '866 Patent by using certain Accused Methods.  OnePass further accuses Verizon of infringement of system claims of the '866 Patent by making, implementing, using, and operating certain Accused Systems.

25.    Verizon has obtained U.S. Postal Service-issued Permit Imprint Authorization for First-Class Mail® and Standard Mail®, as evidenced by the "First-Class Mail U.S. Postage Paid VERIZON" permit imprint on the exemplary U.S. mailing shown below.



26.    Verizon participates in the  USPS CASS™ program to certify the accuracy of its mailing list address records and, in turn, to qualify for automation prices for its First-Class Mail® and Standard Mail®.

27.    On information and belief, Verizon has made, implemented, operated and used certain Accused Systems having a computer architecture comprising:  (a) non-volatile memory for storing (i) an input file containing customer mailing address records, (ii) the USPS ZIP + 4®, City/State, DPV®/DSF2®, LACS^Link® and Suite^Link® reference files, and (iii) an output file containing cleansed customer mailing address records; (b) volatile memory for processing input file customer mailing address records; and (c) CASS™-certified software configured to standardize, correct and verify customer mailing address records pursuant to the USPS Cycle N or Cycle O CASS™ requirements.  Collectively, the foregoing components operate as a single controlled system for mailing list address cleansing to the benefit of Verizon.

7

28.     On information and belief, Verizon has operated and used the Accused Systems to perform certain Accused Methods for processing customer mailing address records pursuant to the USPS Cycle N or Cycle O CASS™ requirements.

29.     On information and belief, Verizon has made, implemented, operated, used, or otherwise exercised control over the Accused Systems and Accused Methods for cleansing mailing list address records in compliance with the USPS Cycle N or Cycle O CASS™ requirements.  On information and belief, such Accused Systems and Accused Methods are directly accessible to, and used and operated by, designated employees, representatives and/or agents of Verizon.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,376,680

30.     OnePass repeats, re-alleges, and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

31.     The '680 patent is valid and enforceable under the United States Patent Laws.

32.     OnePass owns, by assignment, all right, title, and interest in and to the '680 patent, including the right to collect for past damages.

33.     Verizon is not licensed under the '680 Patent and has no other rights or permission to make, implement, use or practice the inventions recited therein.

34.     On information and belief, Verizon has directly infringed at least claims 1-7 of the '680 Patent in violation of 35 U.S.C. § 271, by having used the Accused Methods in the United States without the permission, consent, authorization, or license of OnePass.

35.     On information and belief, Verizon's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

36.     To the extent a third party performed any steps of the Accused Methods, Verizon directed and/or controlled each such step of the Accused Methods, and generated substantial

8

benefits therefrom, including, but not limited to, the cost savings resulting from automation prices for its First-Class Mail® and Standard Mail®.

37.    By way of example of Verizon's infringement of the '680 Patent claims, Verizon's use of the Accused Methods meets all of the limitations of exemplary claim 1 of the '680 Patent, as follows:

38.    The preamble of claim 1 recites:  "A computer-implemented method for creating a cleansed output file containing a plurality of business data records from a single pass through an input file."  On information and belief, Verizon has used the Accused Methods for creating a cleansed output Verizon customer mailing list containing business address records from a single pass through an input Verizon customer mailing list to qualify for automation prices for its First-Class Mail® and Standard Mail®.

39.    Claim limitation 1(a) recites the step of:  "selecting an input file containing a plurality of data records."  On information and belief, Verizon's use of the Accused Methods comprised the step of selecting an input Verizon customer mailing list containing a plurality of address records.

40.    Claim limitation 1(b) recites the step of:  "selecting a reference file, said reference file containing a plurality of data records."  On information and belief, Verizon's use of the Accused Methods comprised the step of selecting each of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACS^Link®) and business address USPS reference file (Suite^Link®), each of which contains a plurality of address records.

41.    Claim limitation 1(c) recites the step of:  "computing a search key."  On information and belief, Verizon's use of the Accused Methods comprised the step of computing a unique key

generated from elements (i.e., street address and postal code) contained in an address record of the input customer mailing list.

42.     For each data record in the input file, claim limitation 1(d)(i) recites the step of: "retrieving said data record from said input file on remote storage."  On information and belief, Verizon's use of the Accused Methods comprised the step of retrieving an address record from an input customer mailing list maintained in non-volatile memory.

43.     For each data record in the input file, claim limitation 1(d)(ii) further recites the step of:  "searching said reference file with a matcher process for all said data records in said reference file that match said search key and reading each said data record from said reference file that matches said search key, thereby generating a candidate data record list."  On information and belief, Verizon's use of the Accused Methods comprised the step of searching each of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACS^Link®) and business address USPS reference file (Suite^Link®) with a matching process for address records that match the unique key, and generating a candidate address record list for the respective reference file.

44.     For each data record in the input file, claim limitation 1(d)(iii) further recites the step of: "searching said candidate data record list and determining a matching data record, wherein said matching data record matches said data record in said input file."  On information and belief, Verizon's use of the Accused Methods comprised the step of searching the candidate address record list for the respective reference file to determine a matching address record from the respective reference file with regard to the address record retrieved from the input customer mailing list.

45.     For each data record in the input file, claim limitation 1(d)(iv) further recites: "creating a new cleansed data record."  On information and belief, Verizon's use of the Accused Methods comprised the step of creating a new cleansed address record for the address record retrieved from the input customer mailing list.

46.     Claim limitation 1(d)(v) further recites:  "cleansing said data record of said input file according to said matching data record, thereby generating verified information."  On information and belief, Verizon's use of the Accused Methods comprised the step of cleansing the address record retrieved from the input Verizon customer mailing list according to the matching address record from the respective USPS reference file, thereby generating verified information for the new cleansed address record.

47.     Claim limitation 1(d)(vi) further recites:  "writing said verified information into said new cleansed data record."  On information and belief, Verizon's use of the Accused Methods comprised the step of writing the verified information from the matching address record from the respective USPS reference file into the new cleansed address record.

48.     Claim limitation 1(d)(vii) further recites "writing said new cleansed data record to a cleansed output file."  On information and belief, Verizon's use of the Accused Methods comprised the step of writing the new cleansed address record to a cleansed output Verizon customer mailing list.

49.     Claim 1 further recites "wherein said steps d(i) through d(vii) are performed in a single pass through said data records of said input file and in a single pass through said reference file, such that each data record of said input file is read from a remote storage location only once, each said matching data record of said reference file is read from a remote storage location only once, and each said new cleansed data record of said cleansed output file is written to a remote

11

storage location only once."  On information and belief, Verizon's use of the Accused Methods comprised performing steps (d)(i) through (d)(vii) in a single pass through the address records of the input customer mailing list, and in a single pass through the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF²®), address conversion USPS reference file (LACS^{Link®}) and business address USPS reference file (Suite^{Link®}), such that each mailing record of the input Verizon customer mailing list is read from non-volatile memory only once, each matching address record from the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF²®), address conversion USPS reference file (LACS^{Link®}) and business address USPS reference file (Suite^{Link®}) is read from non-volatile memory only once, and each cleansed address record of the cleansed output customer mailing list is written to non-volatile memory only once.

50.    By engaging in the conduct described herein, Verizon has injured OnePass and is liable for infringement of the '680 Patent, pursuant to 35 U.S.C. § 271.

51.    By infringing the '680 Patent, Verizon has caused Plaintiff OnePass to suffer monetary damages in an amount to be determined at trial *i.e.*, in an amount that cannot be less than would constitute a reasonable royalty for use of the patented technology, together with pre-judgment and post-judgment interest thereon.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 8,682,866**

52.    OnePass repeats, re-alleges, and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

53.    The '866 patent is valid and enforceable under the United States Patent Laws.

54.    OnePass owns, by assignment, all right, title, and interest in and to the '866 patent, including the right to collect for past damages.

55.    Verizon is not licensed under the '866 Patent and has no other rights or permission to make, implement, use or practice the inventions recited therein.

56.    On information and belief, Verizon has directly infringed at least claims 1-3 and 9 of the '866 Patent in violation of 35 U.S.C. § 271 by having used the Accused Methods in the United States without the permission, consent, authorization, or license of OnePass.

57.    On information and belief, Verizon's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

58.    To the extent any of the steps of the claimed methods of the '866 Patent have been performed by a third party, Verizon has directed and/or controlled each such step of the claimed method, and generated substantial financial benefit therefrom, including but not limited to the cost savings resulting from automation prices for its First-Class Mail® and Standard Mail®.

59.    By way of example of Verizon's infringement of the '866 Patent claims, Verizon's use of the Accused Methods meets all of the limitations of exemplary claim 1, as follows:

60.    The preamble of claim 1 recites:  "a method for performing data hygiene."  On information and belief, Verizon has used the Accused Methods to standardize, correct and verify the address records contained in its customer mailing lists to qualify for automation prices for its First-Class Mail® and Standard Mail®.

61.    Claim 1 further recites the step of "obtaining an input data record of an input file maintained in remote storage."  On information and belief, Verizon's use of the Accused Methods comprised the step of obtaining an address record from an input customer mailing list maintained on non-volatile memory.

62.    Claim 1 further recites the step of "storing said input data record in a local memory."  On information and belief, Verizon's use of the Accused Methods comprised the step of storing an address record obtained from an input customer mailing list in volatile memory.

63.    Claim 1 further recites the step of "processing said input data record, through a series of updating processes successively performed at least one time, wherein said input data record is a first input for a first updating process which results in a first output, wherein an input for each of said updating processes, after said first updating process, is an output from a most previous updating process, wherein a reference file from a plurality of reference files is only used for a single updating process and a different reference file is used for each of said updating processes, and wherein after said at least one time of performing said updating processes a final output stored in local memory is a cleansed input data record."  On information and belief, Verizon's use of the Accused Methods comprised the step of processing the address record obtained from an input customer mailing list through a series of cleansing processes successively performed at least one time through the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACSLink®) and business address USPS reference file (SuiteLink®).  On information and belief, the address record obtained from an input customer mailing list is subjected to a first updating process against one of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACSLink®) and business address USPS reference file (SuiteLink®), the address record output resulting from the first updating process is subjected to a subsequent updating process through another of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACSLink®) and business address USPS

reference file (Suite$^{Link®}$), and the address record input for each subsequent updating process through another of the postal coding USPS reference files (ZIP + 4$^{®}$, City/State), address verification USPS reference file (DPV$^{®}$/DSF$^{2®}$), address conversion USPS reference file (LACS$^{Link®}$) and business address USPS reference file (Suite$^{Link®}$) is the address record output from the previous updating process. On information and belief, upon completion of the series of updating processes successively performed at least one time against the postal coding USPS reference files (ZIP + 4$^{®}$, City/State), address verification USPS reference file (DPV$^{®}$/DSF$^{2®}$), address conversion USPS reference file (LACS$^{Link®}$) and business address USPS reference file (Suite$^{Link®}$), the output of the final updating process maintained in volatile memory is a cleansed address record.

64.     Claim 1 further recites that "wherein said updating processes comprise" the step of "first, matching said input stored in said local memory to a matching reference data record from a plurality of reference files," and that "said matching comprising: retrieving a set of reference data records from a first reference file from a plurality of reference files, said retrieving utilizing a search key based at least in part upon said in put data record; and selecting said matching reference data record from said set of reference data records." On information and belief, Verizon's use of the Accused Methods comprised the step of performing updating processes comprising: (a) matching the input address record stored in volatile memory to a respective matching address record from at least two of the postal coding USPS reference files (ZIP + 4$^{®}$, City/State), address verification USPS reference file (DPV$^{®}$/DSF$^{2®}$), address conversion USPS reference file (LACS$^{Link®}$) and business address USPS reference file (Suite$^{Link®}$) using a unique key based upon the input address record; and (b) selecting a matching address record from at least two of the postal coding USPS reference files (ZIP + 4$^{®}$, City/State), address verification USPS reference file

(DPV®/DSF²®), address conversion USPS reference file (LACS^Link®) and business address USPS reference file (Suite^Link®).

65.     Claim 1 recites that "said updating process" further comprises the step of "second, combining said input with said matching reference data record, said combining comprising: generating an output based upon a data value of said matching reference data record; and storing said output in said local memory."   On information and belief, Verizon's use of the Accused Methods comprised the step of performing updating processes combining the input address record with the matching address record comprising:  (a) generating an output address record based on the content of the matching address record; and (b) storing the output address record in volatile memory.

66.     Claim 1 further recites the step of "outputting said cleansed input data record from said local memory to said remote storage, wherein said input data record is retrieved from said remote storage a single time for performing data hygiene."   On information and belief, Verizon's use of the Accused Methods comprised the step of performing updating processes comprising writing the cleansed input address record from volatile memory to nonvolatile memory.

67.     On information and belief, Verizon has directly infringed at least claim 16 of the '866 Patent in violation of 35 U.S.C. § 271 by having made, implemented, used and practiced the Accused Systems in the United States without the permission, consent, authorization, or license of OnePass.

68.     On information and belief, Verizon's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

69.     To the extent a third party made, implemented, used or operated any element of the Accused Systems, Verizon combined all of the elements of the Accused Systems to complete the

system, and controlled the system as a whole to obtain substantial benefits therefrom, including but not limited to the cost savings resulting from automation prices for its First-Class Mail® and Standard Mail®.

70.    By way of example of Verizon's infringement of the '866 Patent claims, Verizon made and used Accused Systems meeting all of the limitations of exemplary claim 16 of the '866 Patent, as follows:

71.    The preamble of claim 16 recites: "A system that performs data hygiene." On information and belief, Verizon made and used the Accused Systems to standardize, correct and verify the address records contained in its mailing lists to qualify for automation prices for its First-Class Mail® and Standard Mail®.

72.    Claim 16 further recites "a local memory." On information and belief, the Accused Systems comprised volatile memory.

73.    Claim 16 further recites "a plurality of reference files that includes a plurality of reference data records." On information and belief, the Accused Systems comprised the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF2®), address conversion USPS reference file (LACSLink®) and business address USPS reference file (SuiteLink®). Each such reference file comprises a plurality of data records.

74.    Claim 16 further recites "a matcher matching an input data record read from an input file stored in said local memory." On information and belief, the Accused Systems comprised an input address record read from an input mailing list and stored in volatile memory. On information and belief, the Accused Systems implemented and used a matcher software module for matching the input address record.

75.    Claim 16 further recites that the "matcher" includes "means for obtaining a set of candidate data records from a first reference file of said plurality of reference files based at least in part upon a search key computed from said input data record."  On information and belief, matcher software module implemented and used in the Accused System was configured to obtain a set of candidate address record from one of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF²®), address conversion USPS reference file (LACS^{Link®}) and business address USPS reference file (Suite^{Link®}) based  on a unique key computed from the input address record.

76.    Claim 16 further recites "means for selecting a matching data record from said set of candidate data records."  On information and belief, the matcher software module implemented and used in Accused Systems was configured to select a matching address record from the candidate address record list.

77.    Claim 16 further recites "means for updating said input data record as a function of said matching data record while said input data record remains in said local memory."  On information and belief, the matcher software module implemented and used in the Accused Systems was configured to standardize, correct and verify the input address record as a function of the matching address record while the input address record remained in volatile memory.

78.    Claim 16 further recites "a secondary matcher performing another type of matching on said updated input data record that remains in said local memory during processing, wherein said set of candidate data records is retrieved from a second reference file of said plurality of reference files and said input data record remains in said local memory until completion of said other type of matching."  On information and belief, the Accused Systems implemented and used a secondary matcher software module for matching the mailing address standardized, corrected

18

and verified as a function of the matching address record from one of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF²®), address conversion USPS reference file (LACS^Link®) and business address USPS reference file (Suite^Link®).  On information and belief, the secondary matcher software module was configured to retrieve a set of address records from another of the postal coding USPS reference files (ZIP + 4®, City/State), address verification USPS reference file (DPV®/DSF²®), address conversion USPS reference file (LACS^Link®) and business address USPS reference file (Suite^Link®).  On information and belief, the secondary matching software module was configured to standardize, correct and verify the input address record as a function of the matching address record from the second reference file while the input address record remained in volatile memory.

79.    Claim 16 further recites "means for writing said input data record to an output file after said input data record has been handled by the plurality of matchers, where said input data record is read and written only once to perform data hygiene."  On information and belief, the Accused Systems were configured to write the standardized, corrected and verified input address record as a function of the matching address records from the reference files.  On information and belief, the Accused Systems were configured to read each input address record from non-volatile storage only once and write the each standardized, corrected and verified input address record to non-volatile storage only once to perform the mailing list cleansing.

80.    By engaging in the conduct described herein, Verizon has injured OnePass and is liable for infringement of the '866 Patent, pursuant to 35 U.S.C. § 271.

81.    By infringing the '866 Patent, Verizon has caused Plaintiff OnePass to suffer monetary damages in an amount to be determined at trial *i.e.*, in an amount that cannot be less than

would constitute a reasonable royalty for use of the patented technology, together with pre-judgment and post-judgment interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on the complaint as follows:

a.     Judgment in favor of OnePass and against Verizon for infringement, either literally and/or under the doctrine of equivalents, of one or more claims of each of the Patents-in-Suit;

b.     An award to OnePass of compensatory damages arising out of Verizon's infringement, including pre-judgment and post-judgment interest thereon;

c.     An award to OnePass of costs, interest, and reasonable attorneys' fees incurred herein; and

d.     In the event that evidence is adduced through discovery or at trial that Verizon's infringement was willful and deliberate, an award of enhanced damages to OnePass pursuant to 35 U.S.C. § 284;

e.     In the event that circumstances support a finding that this is an "exceptional case," an award of attorneys' fees to OnePass pursuant to 35 U.S.C. § 285; and

f.     Such other and further relief to OnePass as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all issues so triable.


Date:   September 5, 2025                 Respectfully submitted,

                                         By: */s/ David E. Wilks*
                                             David E. Wilks (Bar No. 2793)
                                             D. Charles Vavala, III (Bar No. 6098)
                                             Wilks Law LLC
                                             4250 Lancaster Pike, Suite 200
                                             Wilmington, DE  19805
                                             Phone:  (302) 225-0850
                                             dwilks@wilks.law
                                             cvavala@wilks.law

                                             David Leichtman (pro hac vice motion to be filed)
                                             Robert K. Goethals (pro hac vice motion to be filed)
                                             Leichtman Law PLLC
                                             185 Madison Avenue, 15th Floor
                                             New York, NY 10016
                                             Phone: (212) 419-5210
                                             dleichtman@leichtmanlaw.com
                                             rgoethals@leichtmanlaw.com

                                             *Attorneys for Plaintiff*
                                             *OnePass Data Technology LLC*