**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ONEPASS DATA TECHNOLOGY LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VERIZON COMMUNICATIONS INC. AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,**<br><br>**Defendants.** | **Court No. 1:25-cv-01112-JCG** |

**OPINION AND ORDER**

Before the Court is a dispute regarding Plaintiff OnePass Data Technology LLC's ("OnePass" or "Plaintiff") motion to compel in an action concerning patent infringement. Plaintiff alleges that Defendants Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless (collectively, "Verizon" or "Defendants") infringe U.S. Patent Nos. 7,376,680 ("the '680 Patent") and 8,682,866 ("the '866 Patent") (collectively, "the Asserted Patents"). Compl. at ¶¶ 9, 11 (D.I. 1). Plaintiff requests that the Court order Defendants to produce documents, information, and testimony about unaccused methods and systems. Pl.'s Letter Brief (D.I. 77, 85). Defendants oppose the motion and contend that OnePass has only accused one product, Precisely's CODE-1 Plus, in its

infringement contentions. Verizon's Letter in Opp'n ("Defs.' Letter") (D.I. 88). For the foregoing reasons, the Court denies Plaintiff's motion.

## I. Legal Standard

Parties may request discovery of any nonprivileged matter that is "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Pursuant to Federal Rule of Civil Procedure 37, a party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37(a)(3)(B). "[R]equested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." Micro Motion, Inc. v. Kane Steel Co. Inc., 894 F.2d 1318, 1326 (Fed. Cir. 1990). Rule 26(g) requires a party to make a "reasonable inquiry" before seeking discovery. Id. at 1327.

In determining whether a discovery request concerns relevant information in the context of unaccused products, "[i]f the requesting party can articulate, in a focused, particularized manner, the characteristics or components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit, the discovery-at-issue is more likely to be seen as relevant[.]" Invensas Corp. v. Renesas Elecs. Corp., 287 F.R.D. 273, 279 (D. Del. 2012). This Court has conducted a case-by-case, three-step inquiry into discovery requests of unaccused products as follows:

> (1) as to relevance, the specificity with which the plaintiff has articulated how the unaccused products are relevant to its existing claims of infringement (and how they are thus "reasonably similar" to the accused products at issue in those claims); (2) whether the plaintiff had the ability to identify such products via publicly available information prior to the request[;] and (3) the nature of the burden on defendant(s) to produce the type of discovery sought.

Id. at 282.

## II. Analysis

Plaintiff argues that discovery is warranted relating to all methods and systems used by Verizon that implement any CASS-certified software.[1] Pl.'s Letter at 1–2. Plaintiff's Interrogatory No. 1 stated:

> For each year from 2019 to 2025, identify the manufacturer, software developer, and product name of each Cycle N and Cycle O CASS-certified software product licensed, implemented and/or used by or on behalf of Defendants for address record cleansing pursuant to the U.S. Postal Service Coding Accuracy Support System ("CASS™"), including the identity and location of each entity, department or division affiliated with or contracted by or on behalf of Defendants to perform, operate or manage such address record cleansing.

Ex. A, Verizon's Objections & Responses First Interrogatories at 10 (D.I. 78).

### a. Relevance and Reasonable Similarity

Plaintiff acknowledges that the methods and systems requested are unaccused, but claims that they are relevant to the infringement claims and

---

[1] Plaintiff provided a non-exhaustive list of methods and systems used by Verizon that implement CASS-certified software, including but not limited to Precisely's CODE-1 Plus. Pl.'s Letter at 2.

reasonably similar to the accused methods and systems. Pl.'s Letter at 2. Plaintiff contends that by virtue of the U.S. Postal Service's registry of CASS-certified software, the unaccused methods and systems use the same cleansing processes and reference files to review address records used by the accused methods and systems. Id. Defendants argue that Plaintiff has failed to make an evidentiary showing that the unaccused products have specific components or characteristics that could allegedly infringe. Defs.' Letter at 2. To the extent that Verizon uses stand-alone products that perform CASS-certified address cleansing processes, Plaintiff argues that the products infringe the Asserted Patents' claims for the same reasons provided for Verizon's use of Precisely's CODE-1 Plus. Ex. D (D.I. 78-2) at 3.[2]

Essentially, Plaintiff considers CASS-certification synonymous with use of a single-pass cleansing technique, and thus assumes infringement of the Asserted Patents. The Court cannot be left with "mere suspicion or speculation" that unaccused products will infringe the asserted patents. Micro Motion, Inc., 894 F.2d at 1326. The '866 Patent recites specific claimed steps of storing input data in local memory, cleansing data, and outputting cleansed data into a data record that is saved in remote storage. Ex. C, '866 Patent at 24:33–67 (D.I. 1-3). Additional

---

[2] Plaintiff provided an email sent to Defendants' counsel on September 23, 2026, that identified the basis for Plaintiff's discovery requests regarding the methods and systems identified in the initial infringement contentions. Ex. D (D.I. 78-2)

claims recite how specific reference files and search keys are used to perform the claimed data cleansing technique. See id. at 25:1–48, 26:1–47. Plaintiff asserts that the Court can assume that CASS-certification by itself equates to practicing the claimed steps in the Asserted Patents, and therefore argues that the mere fact of CASS-certification means that the non-accused products infringe the Asserted Patents. Plaintiff's argument requires relying upon the assumption that it is an industry standard that multi-pass technology is not commercially viable, making all CASS-certified software most likely single-pass technology. See Conf. Tr. (D.I. 93). Without more evidence, or mapping of the non-accused methods or systems to the claim elements, the Court is left with only speculation. The Court concludes that Plaintiff has failed to establish with specificity that the non-accused methods and systems are relevant or reasonably similar to the existing claims of infringement. See Invensas Corp., 287 F.R.D. at 282.

**b. Publicly Available Information**

Next, the Court considers whether Plaintiff had the ability to identify the non-accused products through publicly available information before the discovery requests. Id. Plaintiff contends that the methods and systems used by Verizon by their nature are only in the possession of Verizon and not publicly available. Pl.'s Letter at 3. Plaintiff suggests that the lack of publicly available information on the non-accused products is demonstrated by the confidentiality of Verizon's internal

contracts. Id. Defendants argue that the accused product, Precisely's CODE-1 Plus, provides public information regarding the design and operation of non-accused, third-party software that may be used in conjunction with CODE-1 Plus that Plaintiff could have utilized. Defs.' Letter at 3.

The Court acknowledges that Plaintiff accused methods and systems used by Verizon, and that information is likely to be held internally by Defendants. However, Plaintiff identified several non-accused products by name and relied on their CASS-certification to link the products to infringing behavior. Without connecting these identified products to the Asserted Patents, through any specific information about the named non-accused products, Plaintiff requests that the Court engage in speculation as discussed above. Plaintiff was able to identify at least some non-accused products and did not make a showing that information about these named non-accused products is not publicly available. The Court concludes that for the named non-accused products, Plaintiff has not shown an unavailability of public information regarding these products.

**c. Burden**

Lastly, the Court weighs the nature of the burden on Defendants to produce the type of discovery sought by Plaintiff. See Invensas Corp., 287 F.R.D. at 282. Plaintiff argues that the discovery of unaccused methods and systems will not burden Verizon because the requests are specific and narrowly defined. Pl.'s

Letter at 3. Defendants dispute the notion that no burden exists. Defs.' Letter at 3. Defendants claim that Plaintiff seeks not only a list of products, but technical information, financial records, and testimony relating to non-accused third-party software that could triple the size of produced documents in this case. Id.; see Conf. Tr. The Court observes that this case is about to begin the claim construction process in one month. See Scheduling Order (D.I. 40). The burden to Defendants of permitting discovery on an unknown amount of additional CASS-certified, third-party methods or systems is likely very large. The Court concludes that a significant burden would result from granting the request to produce the type of discovery that Plaintiff seeks.

Upon consideration of the factors discussed above, the Court denies Plaintiff's request to order Defendants to produce information regarding non-accused methods and systems.

Accordingly, it is hereby

**ORDERED** that Plaintiff's motion to compel is denied.

IT IS SO ORDERED this 19th day of November, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.